2002 ME 3

**June PENNINGS**

v.

**Stephen PENNINGS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 11, 2001.

Decided: Jan. 4, 2002.

Jonathan C. Hull, Esq., Damariscotta, for plaintiff.

Defendant did not file a brief.

Harold J. Hainke, Esq., Hainke & Tash, Whitfield, Guardian ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶1] June Pennings appeals from a judgment entered in the Superior Court (Lincoln County, *Studstrup, J.*) affirming (but for a different reason) a judgment entered in the District Court (Wiscasset, *Westcott, J.*) dismissing her complaint for divorce on the grounds that the District Court lacks jurisdiction. Because we conclude that the District Court does have jurisdiction over this divorce matter, and that the Superior Court erred in its construction of statutory law, we vacate the judgment of the Superior Court and remand to the District Court for further proceedings.

[¶ 2] On June 26, 1998, June Pennings filed for divorce from her husband on the grounds of irreconcilable differences. On November 3, 1998, Stephen Pennings was charged with crimes committed against June, including aggravated assault, terrorizing with a dangerous weapon, and violation of a protection from abuse order. On June 22, 1999, the Superior Court (Lincoln County, *Atwood, J.*) concluded that Stephen was not competent to stand trial and, pursuant to 15 M.R.S.A. § 101–B, ordered him committed to the Augusta Mental Health Institute (AMHI) for further periodic assessments.

[¶ 3] Sometime after Stephen's commitment, June filed a motion in limine with the District Court in connection with the pending divorce complaint, raising the issue of whether Stephen's involuntary commitment would prevent the court from granting a divorce.[1] Stephen was represented in this proceeding by his guardian ad litem (GAL), who is a member of the Maine bar. The GAL took the position that Stephen wanted a divorce from his wife but was not capable of understanding the nature or extent of the marital estate. For example, Stephen believed that he owned a house that he did not own, and that the town he lived in would intervene in the proceedings to protect his interests. Because the GAL was convinced that Stephen could not make rational decisions about the proper division of marital assets, he opposed the divorce.

[¶ 4] It is not clear from the record what illness Stephen suffers from or exactly how it would affect his ability to participate in divorce proceedings. Aside from the assessment of the GAL, which gives some indication of Stephen's mental state but does not purport to offer a psychiatric diagnosis, the only evidence in the record relating to Stephen's mental state are the reports prepared by the AMHI staff assessing whether Stephen was competent to stand trial on the criminal charges. Apparently, because of Stephen's refusal to fully cooperate with the AMHI staff, the doctors who prepared the reports were not able to make a definitive diagnosis. The staff did recommend, however, that Stephen be placed on anti-psychotic medications. The reports do indicate unambiguously that Stephen is not competent to stand trial for the criminal charges.

[¶ 5] In dismissing June's divorce complaint, the District Court determined that it did not have jurisdiction to grant the divorce because a divorce could not be granted based on the conduct of a spouse while insane. *See Hadley v. Hadley*, 144 Me. 127, 129, 65 A.2d 8 (1949). The Superior Court affirmed the dismissal, but concluded that a divorce could not be granted on the grounds of irreconcilable differences because 22 M.R.S.A. § 902(1)(I), a statute that allows a person to obtain a divorce if the person's spouse has been involuntarily committed to a mental institution for a period of seven years, provided the exclusive grounds for divorce when there was such an involuntary commitment. June's appeal to this Court followed.[2]

---

1. June raised the question of whether the District Court could grant the divorce, but took the position that Stephen's commitment does not prevent the District Court from granting a divorce.

2. Following the submission of June's brief to this Court, Stephen's GAL submitted a letter to this Court explaining that, because he believes that a divorce is in Stephen's best interest, he was not going to file a brief in this appeal. The GAL did not indicate in the letter if he has changed this assessment of whether Stephen could effectively participate in proceedings to divide the assets and liabilities of the marital estate.

[¶ 6] The issue before us is whether the District Court is categorically barred from granting a divorce when one of the parties is involuntarily committed to a mental institution, but has not been committed for a period of seven years. The District Court and the Superior Court both concluded that there is a categorical bar to granting a divorce in those circumstances, but the two courts found the origins of this bar in different places. We conclude that, while the involuntary commitment of one of the spouses might prevent the District Court from granting a divorce in some circumstances, the court has jurisdiction to hear the divorce, and involuntary commitment status does not *categorically* bar a divorce on the grounds of irreconcilable differences.

### I.

[¶ 7] Prior to the adoption of "no-fault" divorce provisions, a divorce could not be granted based on conduct committed by a spouse at a time when that spouse was insane. *See Hadley*, 144 Me. at 129, 65 A.2d at 9–10; *see also Winslow v. Troy*, 97 Me. 130, 133, 53 A. 1008, 1009 (1902) (articulating similar principles in annulment cases). The test to determine whether a spouse's insanity would bar a divorce was whether "the defendant [was] in such a mental condition as to deprive him of the use of his reason to the extent that he did not know right from wrong and was incapable of willing the one or the other." *Hadley*, 144 Me. at 130, 65 A.2d 8 (quoting commentary in 34 L.R.A. 165 on *Hansel v. Hansel*, 3 Pa. Dist. R. 724). The rationale behind this rule was grounded on the principle that a divorce could only be issued when one of the spouses was "at fault," i.e., if the spouse did something wrong and was *culpable* for the action. If the spouse was insane at the time of the conduct constituting fault then the spouse was, by definition, not legally culpable for his or her conduct.

[¶ 8] In the 1970's, the Legislature amended the divorce statute to create the concept of no-fault divorce[3] by allowing the court to grant a divorce on the grounds of irreconcilable differences. *See* P.L. 1973, ch. 532, amending former 19 M.R.S.A. § 691. In 1977, the Legislature also enacted a statutory provision allowing a party to seek a divorce when his or her spouse had been involuntarily committed for a period of seven years. These provisions, as well as the other provisions setting out grounds for divorce, are presently codified in 19–A M.R.S.A. § 902(1), which provides in its entirety:

A divorce may be granted for one of the following causes:

A. Adultery;

B. Impotence;

C. Extreme Cruelty;

D. Utter desertion continued for 3 consecutive years prior to the commencement of the action;

E. Gross and confirmed habits of intoxication from the use of liquor or drugs;

F. Nonsupport, when one spouse has sufficient ability to provide for the other spouse and grossly, wantonly or cruelly refuses or neglects to provide suitable maintenance for the complaining spouse;

---

3. "No-fault divorce" is a term frequently used in the literature as a short-hand way to describe a ground for divorce that does not require as a predicate some culpable act of wrongdoing by a party. The term is not a statutory term of art, nor is it necessarily a precisely defined term. The irreconcilable differences provision does not require the kind of culpability required for other fault grounds for divorce as expressed in *Hadley. See Mattson v. Mattson*, 376 A.2d 473, 475–77 (Me.1977).

G. Cruel and abusive treatment differences;

H. Irreconcilable marital differences; or

I. Mental illness requiring confinement in a mental institution for at least 7 consecutive years prior to the commencement of the action.

19–A M.R.S.A. § 902(1).

[¶ 9] Title 19–A M.R.S.A. § 902(2) provides the procedures that a court must follow when one of the spouses opposes a divorce on the grounds of irreconcilable differences:

If one party alleges that there are irreconcilable marital differences and the opposing party denies that allegation, the court upon its own motion or upon motion of either party may continue the case and require both parties to receive counseling by a qualified professional counselor to be selected either by agreement of the parties or by the court. The counselor shall give a written report of the counseling to the court and to both parties. The failure or refusal of the party who denies irreconcilable marital differences to submit to counseling without good reason is prima facie evidence that the marital differences are irreconcilable.

19–A M.R.S.A. § 902(2).

[¶ 10] Relying on the language in *Hadley*, the District Court concluded that it did not have jurisdiction to grant a divorce on the grounds of irreconcilable differences when one spouse was insane. It recognized that *Hadley* might not apply to the later-enacted "no fault" divorce provisions, but nevertheless concluded that it was bound by existing case law.

■ [¶ 11] It is well-established that divorce law is governed entirely by statute. *See Wilson v. Wilson*, 140 Me. 250, 36 A.2d 774, 774 (1944) (divorce law in Maine is "wholly statutory"); *Stewart v. Stewart*, 78 Me. 548, 7 A. 473, 474 (1887) ("The power of the court to decree divorces is derived solely from the statute. It has no common-law jurisdiction over such matters. It can decree a divorce for such cause only as the legislature authorizes."). *Hadley* must be read in the context of the then-existing statutory grounds for divorce. It does not create a common law rule applicable in all circumstances. The language we used in *Hadley* is unequivocal because there were no grounds for divorce at the time to which it would not apply, and *Hadley's* holding does not limit the Legislature's authority to establish the grounds for which a divorce could be granted. Thus, *Hadley* does not preclude a party from seeking a divorce pursuant to the irreconcilable differences provision in our divorce statute, which allows for a divorce to be granted in some cases where neither party is "at fault."

II.

■ [¶ 12] Even though it concluded that *Hadley* does not apply to the irreconcilable differences provision, the Superior Court affirmed the District Court, relying on some Senate debate about the relationship between the irreconcilable differences provision and the proposed involuntary commitment provision,[4] to conclude that

4. During the floor debate, Senator Merrill discussed our holdings that addressed the effect of mental incompetence on the power of courts to grant divorces and opined that those holdings would not necessarily prevent a court from granting a divorce on the grounds of irreconcilable differences in cases where a party was mentally ill. Legis. Rec. 1872 (1977). He suggested that the bill enacted as section 902(1)(I) might accordingly be unnecessary, and posed to his colleagues the question of why it was required. *Id.* Senator Collins answered his question with the following comments:

section 902(1)(I) provides the exclusive grounds for divorce when one party is involuntarily committed. The Superior Court described L .D. 1596, which was enacted as what is presently 19–A M.R.S.A. § 902(1)(I), as being "introduced specifically to deal with the problem presented by this case."

[¶ 13] The court improperly relied on the legislative history to determine the meaning of the statute. It is proper for a court to go to the legislative history for guidance only when the legislative intent cannot be determined by the "plain meaning" of the statutory language. *See Kimball v. Land Use Regulation Comm'n,* 2000 ME 20, ¶ 18, 745 A.2d 387, 392; *Coker v. City of Lewiston,* 1998 ME 93, ¶ 7, 710 A.2d 909, 910 (1998); *Rowe v. Chapman Trucking,* 629 A.2d 1224, 1226 (Me. 1993). "We look *first* to the plain meaning of the statutory language as a means of effecting the legislative intent. *Where the statutory language is ambiguous,* we examine other indicia of legislative intent, such as legislative history." *See Coker,* 1998 ME 93, ¶ 7, 710 A.2d at 910 (citations omitted) (emphasis added). Legislative history is a useful tool for resolving ambiguity in a statutory provision, but should only be relied on when the meaning of the statute cannot be divined from its words. *See Rowe,* 629 A.2d at 1226 (if meaning of statute is plain, there is no need to look at secondary indicia of legislative intent); *Concord Gen. Mut. Ins. Co. v. Patrons Oxford Mut. Ins. Co.,* 411 A.2d 1017, 1020 (Me.1980) ("If the meaning of this language is plain, we must interpret the statute to mean exactly what it says.").

[¶ 14] The language of 19–A M.R.S.A. § 902(1)(I) does not limit the availability of the other provisions providing grounds for divorce, nor does it suggest an intent to categorically prevent a party from obtaining a divorce based on one of the other enumerated grounds set out in the divorce statute because one of the parties is involuntarily committed to a mental institution. Notwithstanding the fact that the scope of the two provisions may overlap, subsection (I) covers a class of cases where subsection (H) would not be available, such as cases where the court will not make a finding of irreconcilable marital differences even though one spouse has been involuntarily committed for a period exceeding seven years. For example, a court might not grant a divorce on grounds of irreconcilable difference if it concludes that the committed spouse's condition is not incurable and that the differences caused by it are consequently not irreconcilable. If the spouse remains involuntarily committed for a period of seven years, however, then subsection (I) *would* be available, regardless of whether the court considers the situation to be hopeless.

[¶ 15] Moreover, even if the Superior Court properly looked to the legislative history for guidance, that history is far

Mr. President, I am not a learned authority in that field, but it would be my view, as I recall the Act that we passed earlier [allowing a married couple to obtain a divorce for irreconcilable differences], that the present law would not be sufficient to permit divorce for mental illness.

The reason is that the law has always been very zealous in protecting the rights of those under disability. The mentally ill person is under disability, and I think that, of course, would [sic] be extremely reluctant to use their irreconcilable differences method as the basis for divorce.

*Id.*

Based exclusively on these comments by Senator Collins, the Superior Court concluded that "it is inescapable that the amendment provides new grounds for divorce but also acts as a bar to the present parties for grounds other than extended hospitalization."

from clear. The relationship between the irreconcilable differences provision and the involuntary commitment provision was only briefly addressed in the Senate debate, and the short and somewhat ambiguous statement of one Senator does not justify the Superior Court's interpretation.

[¶ 16] We decline to extend the rule enunciated in *Hadley* to section 902(1)(I) of 22 M.R.S.A. Section 902(1)(I) of Title 22 M.R.S.A. does not preclude the granting of a divorce pursuant to another applicable provision just because one spouse is involuntarily committed.

[¶ 17] On remand, the District Court has to address the effect of Stephen's illness on the propriety of granting a divorce. Although the GAL stated that a divorce is in Stephen's best interests,[5] there has never been a definitive finding of a court to this effect.[6]

[¶ 18] Even though there are questions that will have to be answered before a divorce is granted in this case, those questions are not before us in this appeal. The only issue that we can decide now is whether there is a categorical bar to divorce when one party is involuntarily committed. We conclude that there is not, and we vacate the decision of the Superior Court and remand with instructions to vacate the decision of the District Court and remand the case for further proceedings consistent with this opinion.

The entry is:

Judgment vacated. Remand to the Superior Court for remand to the District Court for further proceedings consistent with this opinion.

---

5. The GAL supports the granting of a divorce because he believes it to be in Stephen's best interests, but he does not indicate whether he thinks Stephen is competent to make this determination or if he is speaking for Stephen

6. The only judicial finding regarding Stephen's mental state is the determination that he is not competent to stand trial for the criminal charges. That finding is not dispositive of Stephen's ability to participate in the divorce proceedings.