2003 ME 36

**Franklin L. WATTS et al.**

**v.**

**Howard T. WATTS et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 15, 2002.

Decided: March 19, 2003.

Amy L. Faircloth (orally), Pelletier & Faircloth, P.A., Bangor, for plaintiffs.

Martha J. Harris (orally), Paine, Lynch & Harris, P.A., Bangor, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Howard and Sandra Watts (Howard) appeal from the judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) that 33 M.R.S.A. § 465 (1999) does not vest them with ownership of a disputed parcel of land and that Franklin and Mildred Watts (Franklin) own the disputed property. The court also found that neither party committed trespass. We agree that section 465 does not vest Howard with ownership of the property and affirm the judgment in all respects.

## I. BACKGROUND

[¶ 2] The Wattses are neighbors in Medway, Maine. They contest the ownership of a lot created when the Town of Medway constructed a gradually bending road, Horseshoe Road, within the sharp corner depicted on the recorded subdivision plan. The contested parcel abuts Horseshoe Road and properties owned by each of the Wattses. Both parties derived their property from a common grantor, Roy Powers, who subdivided his property in 1959. Before Powers subdivided his property, he commissioned a plan for the subdivision, the "Stadia Survey," which he recorded.

[¶ 3] Franklin owns two parcels of land adjacent to Horseshoe Road. He acquired Lot 9 by deed in 1959. More significantly, in 1971, Powers conveyed by deed to Franklin a thirty-nine acre parcel that included the subdivision. The deed reserved only "those lots ... (within the subdivision) previously conveyed by Roy Powers most of which are shown on a plan by John Gavin [the Stadia Survey]."

[¶ 4] Howard acquired by deed in 1977 two of the previously conveyed parcels within the subdivision, Lot 25, which abuts both the disputed parcel and Horseshoe Road, and the "Northerly Lot," not relevant here.

## II. DISCUSSION

[¶ 5] Howard contends that because he owns Lot 25, 33 M.R.S.A. § 465 operates to deem him the owner of the land to the centerline of the road as constructed because his predecessor in title, Powers, never reserved title to the "as constructed" road. Therefore, he asserts ownership of the disputed parcel of property which lies between his property and the road as constructed. The Superior Court found that section 465 does not apply as Howard suggests, because its application is predicated on the application of 33 M.R.S.A. § 461 (1999), and section 461 does not apply because Lot 25 was originally conveyed with reference to a recorded plan. Because the court found section 461 inapplicable, it also held section 465 inapplicable. We agree.

[¶ 6] Effective March 31, 1978, the Legislature enacted section 465 to clarify title

to the land underlying roads by eliminating the possibility of ancient claims. 33 M.R.S.A. § 469 (1999). Section 465 provides:

> Any person owning land in this State abutting a town or private way, county road or highway, *whose predecessors in title have not reserved any title in such road or way as provided in sections 460 and 461,* or filed the notice provided in section 462 within the time specified therein, shall be deemed to own to the centerline of such road or way except as provided in sections 466 to 469.

33 M.R.S.A. § 465 (1999) (emphasis added). Thus, if Howard's predecessor in title had reserved title to Horseshoe Road as provided in sections 460 or 461, section 465 would not apply and Howard's property would not extend to the centerline of the road.[1] Section 461, entitled "Prior conveyances," provides:

> Any conveyance made prior to October 3, 1973 which conveyed land abutting upon a town or private way, county road or highway shall be deemed to have conveyed all of the grantor's interest in the portion of such road or way, which abutted said land unless the grantor shall have expressly reserved his title to such road or way by a specific reference thereto contained in said conveyance. *This section shall not apply to any conveyance of a lot or lots by reference to a recorded plan.*

33 M.R.S.A. § 461 (1999) (emphasis added).

[¶ 7] Here, Howard's predecessor in title, Powers, conveyed lots by reference to a recorded plan. According to the last sentence of section 461, the section does not apply to such conveyances. In rendering section 461 inapplicable to conveyances by reference to a recorded plan, the Legislature gave effect to the established common law rule that a conveyance of a lot by reference to a plan does not convey title to the centerline of an abutting road. *See Sutherland v. Jackson,* 32 Me. 80, 82–83 (1850) ("In this State a grant of land bounded on a highway carries the fee to the centre of it, if there be no words to show a contrary intent.... [But] a conveyance of [a] lot by the plan does not carry the fee to the centre of the way ....") (citation omitted). The plan itself expresses the grantor's intent to convey only the lot depicted in the plan. Because the grantor's intent is clear, the common law centerline presumption, codified by section 461, does not apply.

[¶ 8] Despite section 461's intention that the centerline presumption not be applied to conveyances of lots by plan, Howard asks us to find that he owns to the centerline of the road by operation of section 465 alone. He contends that the application of section 465 is not dependent on the application of 461; therefore, he argues, section 465 applies and extends his property boundary to the centerline of the road. If we were to accept Howard's argument, we would render the last sentence of section 461 meaningless, because a person owning property conveyed by reference to a recorded plan would always own to the centerline of an abutting road. It is well established, however, that "[n]othing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible." *Struck v. Hackett,* 668 A.2d 411, 417 (Me. 1995) (citation omitted).

[¶ 9] Moreover, when enacting "An Act to Clarify Title to Roads and Ways," codified as 33 M.R.S.A. §§ 460–69, the Legislature expressed its intent to give

---

1. Franklin has not argued that any of the exceptions in 33 M.R.S.A. §§ 466–469 (1999) apply, nor has he argued that notice was filed as provided in section 462.

"statutory effect to the common law presumption that an abutting owner owned to the centerline of the road." L.D. 983 (106th Legis.1973). While the common law presumed that a conveyance of land bounded by a public way includes the fee to the centerline of the public way, the presumption did not arise when a conveyed parcel was described by reference to a plan, like the "Stadia Survey," because the grantor is not presumed to have transferred the fee under the road. *See Sutherland,* 32 Me. at 82–83. As the Superior Court correctly explained, "[t]he 'presumption of centerline ownership' fails when the instrument of conveyance reflects the grantor's intent to retain ownership of the fee to the abutting way." We should not presume the Legislature intended to alter the common law, and we construe a statute to alter the common law only to the extent the Legislature makes clear its intent to do so. *Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 996 (Me.1983).

[¶ 10] In the context of a conveyance of a lot or lots by recorded plan, the application of section 465 is predicated on the applicability of section 461. Because Howard's predecessor in interest conveyed lots by reference to a recorded plan, neither section 461 nor section 465 applies, and Howard is not deemed to own to the centerline of Horseshoe Road. Franklin, therefore, owns the contested parcel by deed as a result of the 1971 thirty-nine-acre conveyance.

[¶ 11] Finally, contrary to Howard's contention in his counterclaim, he is not entitled to damages for trespass because Franklin owns the land in question. *See* 14 M.R.S.A. § 7552(2)(A) (Pamph.2002).

The entry is:

Judgment affirmed.