2003 ME 70

**STATE of Maine**

v.

**Harold SHEPLEY**

**Docket**

Supreme Judicial Court of Maine.

Argued: Feb. 13, 2003.
Decided: May 9, 2003.

R. Christopher Almy, District Attorney,
C. Daniel Wood, Asst. Dist. Atty. (orally),
Bangor, for State.

Bradford S. Macdonald, (orally), Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Harold Shepley appeals from a judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) revoking Shepley's probation. Shepley contends that his probation automatically terminated, pursuant to 17–A M.R.S.A. § 1202(1–B) (Supp.1999),[1] before the State filed its motion for probation revocation. We disagree and affirm the judgment.

## I.  CASE HISTORY

[¶ 2] On February 13, 2001, Shepley, upon his plea, was convicted of one count of terrorizing,[2] two counts of assault,[3] and one count of violating conditions of release.[4] The crimes all occurred during 2000. The court sentenced Shepley to the county jail for a term of nine months, with all but fifteen days suspended. Shepley was also placed on probation for a term of two years, with special conditions that Shepley complete a batterers' intervention program, refrain from criminal conduct, refrain from the use of drugs or alcohol, and pay a monthly supervision fee to the Department of Corrections.

[¶ 3] On February 19, 2002, Shepley completed his batterers' intervention program. He did not file a motion with the court to terminate his probation. On April 27, 2002, Shepley was arrested and charged with criminal mischief.[5] Two days later, Shepley's probation officer filed a motion to revoke Shepley's probation.

[¶ 4] Prosecution of the probation violation depends upon the interpretation of 17–A M.R.S.A. § 1202(1–B) (Supp.1999) and the 2001 amendment to that section. In 1999, the Legislature added section 1202(1–B) to the probation statute. P.L. 1999, ch. 492, § 1. Section 1202(1–B) stated:

Notwithstanding subsection 1, the period of probation for a person convicted of a Class D or Class E crime involving domestic violence must be 2 years, except that the term of probation must be terminated at the time the probationer completes a certified batterers' intervention program as defined in Title 19–A, Section 4014.

17–A M.R.S.A. § 1202(1–B) (Supp.1999). The Legislature amended this statute in 2001, by P.L.2001, ch. 386, § 3, to read as follows:

Notwithstanding subsection 1, the period of probation for a person convicted of a Class D or Class E crime involving domestic violence must be 2 years, except that the term of probation must be terminated at the time the probationer completes a certified batterers' intervention program as defined in Title 19–A, Section 4014, *unless there is another condition of probation that has yet to be met.*

17–A M.R.S.A. § 1202(1–B) (Supp.2001) (emphasis added).

[¶ 5] After a preliminary hearing on the probation revocation motion, the Superior

---

1. As we note, *infra,* the Legislature amended 17–A M.R.S.A. § 1202(1–B) in 2001. P.L. 2001, ch. 386, § 3. Shepley asserts that the 1999 version governs the termination of his probation.

2. 17–A M.R.S.A. § 210(1)(A) (Supp.2002).

3. 17–A M.R.S.A. § 207(1) (1983).

4. 15 M.R.S.A. § 1092 (2003).

5. 17–A M.R.S.A. § 806(1) (Supp.2002).

Court (*Mead, J.*) specifically found that Shepley had successfully completed the batterers' intervention program on February 19, 2002. However, the court held that Shepley's probation did not terminate at that time because 17–A M.R.S.A. § 1202(1–B), as clarified by the 2001 amendment to the statute, prevented Shepley's probation from terminating until Shepley met all of the conditions of his probation.

[¶ 6] The court held that the 2001 amendment to 17–A M.R.S.A. § 1202(1–B) applied to Shepley because it clarified the original legislative intent behind 17–A M.R.S.A. § 1202(1–B) (Supp.1999) and, therefore, it was not a retroactive application of a new law. The court held that Shepley's probation did not terminate when he completed the batterers' intervention program because Shepley had yet to satisfy the probation condition that he pay a monthly supervision fee to the Department of Corrections.

[¶ 7] At a subsequent hearing, the parties stipulated that Shepley violated the conditions of his probation based on the court's ruling that Shepley's probation did not terminate before the April 27, 2002, violation. The court entered an order that partially revoked Shepley's probation, amended the conditions of Shepley's probation to require that Shepley complete an anger management program, and stayed Shepley's sentence pending appeal.

[¶ 8] This appeal followed.

## II. LEGAL ANALYSIS

### A. Retroactive Application of the 2001 Amendment

■ [¶ 9] "The interpretation of a statute is a matter of law that we review de novo." *Hailu v. Simonds*, 2001 ME 155, ¶ 8, 784 A.2d 1, 3; *accord State v. Nastvogel*, 2002 ME 97, ¶ 6, 798 A.2d 1114, 1117. As a preliminary matter, we must decide whether the 1999 or the 2001 version of 17–A M.R.S.A. § 1202(1–B) applies to Shepley's probation. Absent clear and unequivocal language to the contrary, a statutory amendment does not affect any penalties that were incurred before the amendment took effect, nor does it apply to crimes committed prior to the time the amendment was enacted. 1 M.R.S.A. § 302 (1989);[6] *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 628 (Me.1994).[7]

---

6. 1 M.R.S.A. § 302 (1989) provides, in pertinent part:

The repeal or amendment of an Act or ordinance does not affect any punishment, penalty or forfeiture incurred before the repeal or amendment takes effect, or any action or proceeding pending at the time of the repeal or amendment, for an offense committed or for recovery of a penalty or forfeiture incurred under the Act or ordinance repealed or amended. Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby.

7. In *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 628 (Me.1994), we reaffirmed the existence of the judicially-created presumption that, "absent any pending action or proceeding and absent any legislative statement to the contrary, the Legislature intends that procedural changes apply to preexisting, inchoate interests and that substantive changes do not." We cautioned, however, that this substantive/procedural distinction does not apply to the determination of the legislative intent of an amendment applied to proceedings that were pending when the amendment was enacted. *Id.* We stated that 1 M.R.S.A. § 302 governs the temporal application of legislation to pending proceedings, unless there is "clear and unequivocal direction contained in the legislation." *Id.* Therefore, the common law substantive/procedural distinction is not applicable to the determination of whether the 1999 version of section 1202(1–B) or the 2001 amendment governs Shepley's probation.

[¶ 10] The 1999 version of section 1202(1–B) governs the termination of Shepley's probation because that version of the statute was in effect in 2000 when Shepley committed his crimes. *State v. Hardy*, 489 A.2d 508, 512 (Me.1985) ("Punishment is incurred at the time of the wrongful act, as opposed to when ultimate liability for the act is imposed. Thus, the wrongdoer must be punished pursuant to the law in effect at the time of the offense."). To apply the 2001 amendment to Shepley would violate the United States Constitution, article I, section 10, and the Maine Constitution, article I, section 11, as an ex post facto application of a criminal law. *See State v. Haskell*, 2001 ME 154, ¶ 6, 784 A.2d 4, 8 ("A criminal statute will violate these constitutional prohibitions of ex post facto legislation if ... [it] makes more burdensome the punishment for a crime after its commission ....").

B. Time of Termination of Probation

[¶ 11] Pursuant to 17–A M.R.S.A. § 1202(1–B) (Supp.1999), the court must place a person convicted of a Class D or Class E crime involving domestic violence on probation for two years. Section 1202(1–B) then qualified the mandatory two-year probation period, stating that it "must be terminated" upon the probationer's completion of a batterers' intervention program.

[¶ 12] In interpreting a statute, "[w]e look first to the plain meaning of the statutory language as a means of effecting the legislative intent." *Pennings v. Pennings*, 2002 ME 3, ¶ 13, 786 A.2d 622, 627 (quoting *Coker v. City of Lewiston*, 1998 ME 93, ¶ 7, 710 A.2d 909, 910; *accord Gallant v. Bartash*, 2002 ME 4, ¶ 3, 786 A.2d 628, 629. "Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common, and ordinary meaning, such as [people] of common intelligence would usually ascribe to them." *State v. Vainio*, 466 A.2d 471, 474 (Me.1983).

[¶ 13] The common and ordinary meaning of the "must be terminated" language in section 1202(1–B) indicates that the Legislature intended some affirmative act to terminate the probation, rather than for the probation to automatically terminate when the probationer completed the batterers' intervention program. Because some objective determination must be made about whether a probationer has satisfactorily completed the batterers' intervention program, court action is a prerequisite to termination of probation short of the statutory two-year term.

[¶ 14] The central question presented in this case, therefore, is whether the court's finding that Shepley had satisfactorily completed the batterers' intervention program, made after the State charged him with criminal mischief, is an act sufficient to terminate the probation retroactively to the date he completed the program.

[¶ 15] Criminal statutes are generally construed strictly and any ambiguities are generally resolved in favor of the defendant. *See Nastvogel*, 2002 ME 97, ¶ 6, 798 A.2d at 1117. However, "the rule of strict construction of a penal law is subordinate to this other rule, that the judicial interpretation must be reasonable and sensible, with a view to effectuating the legislative design, and the true intent of the Legislature." *State v. Millett*, 392 A.2d 521, 525 (Me.1978). Courts, therefore, must not construe a statute's plain language in a manner that creates an absurd, illogical, or inconsistent result. *Nastvogel*, 2002 ME 97, ¶ 6, 798 A.2d at 1117.

[¶ 16] Construing section 1202(1–B) in the most reasonable and sensible manner, the termination of Shepley's probation

was effective the date the trial court entered its judicial finding. First, when drafting section 1202(1–B), the Legislature could have stated, but did not, that the termination of probation "relates back" from the court's finding to the date the probationer completed the program. Second, proponents of 17–A M.R.S.A. § 1202(1–B) (Supp.1999) recognized that instances of domestic violence are widespread in Maine. *See* 1 Legis. Rec. 835 (1st Reg.Sess.1998–1999) (statement of Rep. Povich). The Legislature, therefore, sought to make the probationary period more demanding for persons convicted of domestic violence when it enacted section 1202(1–B). *See* P.L.1999, ch. 492, § 1 ("An Act to Increase the Length of Probation for a Person Convicted of Domestic Violence."). Finally, interpreting the provision at issue to require the court to "relate back" the termination of Shepley's probation to the date he completed the program is illogical because it will result in absolute uncertainty as to the probationary status and obligations of probationers who claim to have completed a certified batterers' intervention program but for whom there has been no formal termination of probation. *See State v. Heald,* 382 A.2d 290, 294 (Me.1978) ("[I]n the interpretation of penal statutes ... the legislative language will be construed to have such meaning as shall appear most reasonable and best suited to accomplish the objects of the legislation.").

[¶ 17] Shepley's probation was in effect when the law enforcement authorities arrested him and when the State charged him with criminal mischief. He had not moved to terminate his probation, and the court had not found that he completed the batterers' intervention program. As a consequence, Shepley violated a condition of his probation, and, thus, the court properly revoked his probation.

8. P.L.1991, ch. 258, § 3.

The entry is:

Judgment affirmed.

ALEXANDER, J., with whom DANA, J., joins, dissenting.

[¶ 18] I respectfully dissent. Since adoption of the Criminal Code, courts have been authorized to terminate probation at any time earlier than the specified probation period upon a showing of good conduct, including satisfactory completion of a condition or conditions of probation. This early termination of probation can be initiated by a probationer, by a probation officer, or even by the court on its own motion. Thus, 17–A M.R.S.A. § 1202(3) (Supp.2002) essentially unchanged since adoption of the Criminal Code, and in its present form since 1991,[8] states that:

On application of the probation officer, or of the person on probation, or on its own motion, the court may terminate a period of probation and discharge the convicted person at any time earlier than that provided in the sentence made pursuant to subsection 1, if warranted by the conduct of such person. A termination and discharge may not be ordered upon the motion of the person on probation unless notice of the motion is given to the probation officer by the person on probation. Such termination and discharge shall serve to relieve the person on probation of any obligations imposed by the sentence of probation.

[¶ 19] The Court's opinion suggests that when the Legislature enacted section 1202(1–B) in 1999, and included the specification that the two-year probation "must be terminated at the time the probationer completes a certified batterers' intervention program," the Legislature really meant nothing more than that once the

 

intervention program was completed, probation might be terminated early upon a motion being filed as authorized by section 1202(3).

[¶ 20] The Court's interpretation renders the "must be terminated at the time" language crafted by the Legislature a nullity. It also suggests that subsequent amendments to section 1202(1–B) were unnecessary and superfluous.

[¶ 21] In construing a statute, we have said that "[n]othing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible." *Watts v. Watts,* 2003 ME 36, ¶ 8, 818 A.2d 1031, 1033 (quoting *Struck v. Hackett,* 668 A.2d 411, 417 (Me. 1995)); *see also Stromberg–Carlson Corp. v. State Tax Assessor,* 2001 ME 11, ¶ 9, 765 A.2d 566, 569 ("Words must be given meaning and not treated as meaningless and superfluous."). Our caution against treating statutory language as superfluous is particularly important in this criminal case where—as the Court recognizes—the statute must be strictly construed and ambiguities resolved in favor of the defendant. Examining legislative intent from the common and ordinary meaning of the phrase "at the time that the probationer completes a certified batterers' intervention program," a reasonable construction suggests that once the court determines that the probationer has satisfactorily completed the batterers' intervention program, the court must order that the termination is effective, retroactive to the date—"at the time that"—the program was completed.

[¶ 22] The Superior Court found, and the State does not dispute, that Shepley satisfactorily completed his batterers' intervention program on February 19, 2002. On this basis, pursuant to 17–A M.R.S.A. § 1202(1–B) (Supp.1999), the court was required to terminate Shepley's probation effective February 19, 2002. Because Shepley was not on probation when he was charged with criminal mischief on April 27, 2002, or when the State filed its motion for probation revocation two days later, the Superior Court erred in revoking Shepley's probation. Accordingly, I would vacate the judgment.