2004 ME 124

**Gregory L. BUTTERFIELD**

v.

**NORFOLK & DEDHAM MUTUAL FIRE INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued: Oct. 14, 2003.

Decided: Sept. 30, 2004.

Thimi R. Mina (orally), McCloskey, Mina & Cunniff, L.L.C., Portland, for plaintiffs.

Paul S. Douglass (orally), Paul S. Douglass, P.A., Lewiston, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Norfolk & Dedham Mutual Fire Insurance Co. appeals from a judgment entered in the Superior Court (Cumberland County, *Humphrey, J.*) in favor of Gregory L. Butterfield, on three counts of Butterfield's five-count complaint. Norfolk argues that the court erred by holding that provisions of the automobile insurance policy, issued by Norfolk, violate Maine's uninsured motorist statute, 24–A M.R.S.A. § 2902(1) (2000), impermissibly limiting

Gregory's recovery to injury or damages sustained by persons named in the contract. We disagree and affirm the judgment.

[¶ 2] This case presents a narrow, yet important, question. Previously, we have held that when an uninsured motorist policy tracks the language in Maine's uninsured motorist statute, liability extends to cover not only named insureds, but any individual for whom a named insured is legally entitled to bring a claim for damages caused by an uninsured motorist. *Jack v. Tracy*, 1999 ME 13, 722 A.2d 869. The Superior Court addressed the question that necessarily follows: may an insurer use limiting language in an uninsured motorist policy, restricting its coverage to claims brought by named insureds, for injuries *sustained by* named insureds? We now hold that insurers may not limit uninsured motorist coverage by adding restrictive language to their uninsured motorist policies.[1]

## I. BACKGROUND

[¶ 3] Gregory's twenty-one-year-old daughter, Brandy, died in an automobile accident. Both the vehicle in which Brandy was a passenger and the driver of the other vehicle were uninsured. Gregory is a named insured on an automobile insurance policy issued by Norfolk. He filed a claim with Norfolk for all damages he was legally entitled to recover due to the death of Brandy. Norfolk denied Gregory's claims, citing language in his policy that limited uninsured motorist recovery to injuries sustained by "insured persons," or family members within the policy's definition. The policy defines family members as persons related by blood, marriage, or adoption, who reside with the insured.

Thus, because Brandy did not reside with Gregory, she was not a named insured under his policy. Gregory sought a declaratory judgment that Norfolk was liable.

## II. DISCUSSION

[¶ 4] "[W]e look first to the plain meaning of the statutory language as a means of effecting the legislative intent." *State v. Shepley*, 2003 ME 70, ¶ 12, 822 A.2d 1147, 1151 (quoting *Pennings v. Pennings*, 2002 ME 3, ¶ 13, 786 A.2d 622, 627) (internal quotation and citation omitted). "Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common, and ordinary meaning, such as [people] of common intelligence would usually ascribe to them." *State v. Vainio*, 466 A.2d 471, 474 (Me. 1983). An insurance policy incorporates all the relevant mandatory provisions of the statute pursuant to which the policy was drafted. *Skidgell v. Universal Underwriters Ins. Co.*, 1997 ME 149, ¶ 7, 697 A.2d 831, 833. The interpretation of section 2902(1) is a question of law, which we review de novo. *See State v. McLaughlin*, 2002 ME 55, ¶ 5, 794 A.2d 69, 72.

[¶ 5] Maine law requires that any automobile insurance policy, insuring against liability, include coverage for "the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle." 24–A M.R.S.A. § 2902(1). We have held that:

---

1. Because we affirm the Superior Court's decision, we do not address Gregory's alternative argument that he is entitled to relief based on an independent claim for emotional distress pursuant to the plain wording of his uninsured motorist policy.

In contrast with the liberal construction to be given the remedial statute mandating uninsured motorist coverage in all liability insurance policies issued with respect to any vehicle registered or principally garaged in this state ... courts, in order to carry out the primary purpose of such legislation, will construe conditions and exceptions of the insurance contract, inserted therein in an attempt to limit the coverage prescribed by the statute, strictly against the insurer and liberally in favor of the insured. *Wescott v. Allstate Ins.*, 397 A.2d 156, 167 (Me.1979).

[¶ 6] Norfolk's uninsured motorist policy does not precisely track Maine's uninsured motorist law. Under Maine's uninsured motorist statute, insurance policies issued in this State must include "protection of persons insured thereunder who are legally entitled to recover damages from ... uninsured, underinsured or hit-and-run motor vehicles, for bodily injury." 24–A M.R.S.A. § 2902(1). Norfolk's policy deviates by limiting uninsured motorist coverage to damages an insured is legally entitled to recover because of bodily injury "sustained by an insured." Had Norfolk's policy tracked section 2902(1) without qualification, there is no question that Gregory would be able to recover for the death of Brandy, even though she was not a named insured under the policy. *See Jack,* 1999 ME 13, ¶ 12, 722 A.2d at 871–72.

[¶ 7] Norfolk relies heavily on cases from other jurisdictions, asserting that the Superior Court's holding runs counter to a majority view.[2] In order to understand why Norfolk's phalanx of authority is ultimately unpersuasive, a closer look into the past and present of uninsured motorist jurisprudence is helpful.

[¶ 8] Uninsured motorist coverage is a relatively recent development. "In 1955, certain auto insurance companies—in an evident effort to stave off the adoption by states of either compulsory insurance or unsatisfied judgment measures—began to offer uninsured motorist coverage in their own auto policies."[3] Due to increasing costs attributed to uninsured motorists, the majority of states currently require that insurers at least offer uninsured motorist coverage.[4]

[¶ 9] States adopting uninsured motorist legislation typically used similar or identical language, which insurers have often tracked in the policies they issue. The proliferation of similarly worded uninsured motorist statutes and policies have encouraged courts and litigants to attempt to distill a majority position. The results are

**2.** *Delancey v. State Farm Mut. Auto. Ins. Co.,* 918 F.2d 491 (5th Cir.1990); *State Farm Mut. Ins. Co. v. Wainscott,* 439 F.Supp. 840 (D.Alaska 1977); *Bartning v. State Farm Fire & Cas.,* 164 Ariz. 370, 793 P.2d 127 (Ct.App. 1990); *Smith v. Royal Ins. Co. of Am.,* 186 Cal.App.3d 239, 230 Cal.Rptr. 495 (1986); *Farmers Ins. Exch. v. Chacon,* 939 P.2d 517 (Colo.Ct.App.1997); *Valiant Ins. Co. v. Webster,* 567 So.2d 408 (Fla.1990); *State Farm Mut. Auto. Ins. v. George,* 326 Ill.App.3d 1065, 261 Ill.Dec. 236, 762 N.E.2d 1163 (2002); *Ivey v. Mass. Bay Ins. Co.,* 569 N.E.2d 692 (Ind.Ct.App.1991); *Lafleur v. Fid. & Cas. Ins. Co. of New York,* 385 So.2d 1241 (La.Ct.App. 1980); *Gillespie v. S. Farm Bureau Cas. Ins.*

*Co.,* 343 So.2d 467 (Miss.1977); *Livingston v. Omaha Prop. & Cas. Ins. Co.,* 927 S.W.2d 444 (Mo.Ct.App.1996); *Gamboa v. Allstate Ins. Co.,* 104 N.M. 756, 726 P.2d 1386 (1986); *Allstate Ins. Co. v. Hammonds,* 72 Wash.App. 664, 865 P.2d 560 (1994).

**3.** Gary T. Schwartz, *Symposium: A Proposal for Tort Reform: Reformulating Uninsured Motorist Plans,* 48 OHIO ST. L.J. 419, 422 (1987).

**4.** Mark Arthur Saltzman, *Reed v. Farmers Insurance Group,* 15 OHIO ST. J. ON DISP. RESOL. 895 (2000) (discussing the proliferation of uninsured motorist laws).

often misleading, however, as the cases may address different issues, and often base their holdings on legal and policy precedents that are not universally accepted.

[¶ 10] It is necessary, at the outset, to distinguish between two distinct issues. The first and primary issue is whether coverage under a particular uninsured motorist statute and policy extends to cover situations where a named insured brings a claim (usually under a wrongful death theory) based on damages caused by an uninsured motorist when the victim is not named in the policy. The second issue (before us today) is whether, having found that a particular uninsured motorist statute does extend to such claims, may an insurer refuse to insure against these claims by inserting limiting language to its uninsured motorist insurance policies. The first issue is one of scope, whereas the second asks whether the recognized scope may be contractually curtailed.[5]

[¶ 11] In most of the cases cited by Norfolk, courts are grappling with the first issue, involving scope. The resolution of this fundamental question usually turns on how the jurisdiction has historically approached the interpretation of insurance contracts and statutes. *See, e.g., Allstate Ins. Co. v. Hammonds*, 72 Wash.App. 664, 865 P.2d 560, 563–64 (1994); *Gaddis v. Safeco Ins. Co.*, 58 Wash.App. 537, 794

P.2d 533, 536–37 (1990) (discussing that court's history of upholding insurance exclusions that bear a relationship to an increased risk borne by an insurer); *Valiant Ins. Co. v. Webster*, 567 So.2d 408, 410 (Fla.1990) (stating that Florida courts have "consistently followed the principle that if the liability portions of an insurance policy would be applicable to a particular accident, the uninsured motorist provisions would likewise be applicable; whereas, if the liability provisions did not apply to a given accident, the uninsured motorist provisions [did not apply]"). Thus, those courts relied upon their respective precedents and policy determinations in resolving the primary question of how far the Legislature intended uninsured motorist laws to reach.

[¶ 12] Any comparison with other jurisdictions must begin with the recognition that we have already interpreted Maine's uninsured motorist statute to extend coverage to wrongful death claims caused by an uninsured motorist, when the deceased was not an insured under the claimant's policy.[6] Of the cases cited by Norfolk, two appear to be irrelevant;[7] two come from jurisdictions that allow an insured to opt out of uninsured motorist coverage;[8] another two involve insurance policies that track the states' uninsured motorist law without limiting language (posing the pre-

---

**5.** In other words, the issue becomes whether the scope of the uninsured motorist statute is permissive, or obligatory.

**6.** Our holding in *Jack v. Tracy*, 1999 ME 13, 722 A.2d 869, thus, conflicts with settled law in jurisdictions such as Florida. "No Florida decision has allowed a survivor to recover under the wrongful death statute where the decedent could not have recovered." *Valiant Ins. Co.*, 567 So.2d at 411.

**7.** *Gamboa*, 726 P.2d at 1387–88 (the main issue before the court was whether stacking

insurance policies is permitted); *Ivey*, 569 N.E.2d at 694–95 (plaintiff's claim was dismissed because he had failed to appoint a personal representative within the two-year time frame required by the statute).

**8.** *Farmers Ins. Exch.*, 939 P.2d at 520; *Lafleur*, 385 So.2d at 1244–45. The decision by these states to allow their citizens to opt out of uninsured motorist coverage suggests a different legislative intent, and makes any comparison with Maine's uninsured motorist law insignificant.

cise question addressed by this court in *Jack*);[9] and three appear to be on point, involving similar statutes and policies, however containing decisions based on interpretations of the respective states' uninsured motorist statutes, which conflict with this Court's analysis in *Jack*.[10] Therefore, none of these cases are particularly helpful in interpreting Maine's uninsured motorist statute.

■ [¶ 13] The case before us is informed by a series of cases in which we have interpreted uninsured motorist insurance contracts. In *Jack* we were faced with facts identical to those involved in the present case: a father sought compensation under his uninsured motorist policy for the wrongful death of his daughter at the hands of an uninsured motorist. In *Jack*, we were called upon to interpret the meaning of an insurance contract containing language that tracked our uninsured motorist statute.[11] The policy in *Jack* stated that:

> [Allstate] will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

*Jack,* 1999 ME 13, ¶ 4, 722 A.2d at 870.

[¶ 14] Relying on the plain language cited above, we held that Allstate's policy required that it compensate its insured for the wrongful death of the insured's daughter. *See Jack,* 1999 ME 13, ¶¶ 9–12, 722 A.2d at 871–72. The operative words in the contract were those extending coverage for claims the insured was legally entitled to bring. We have recently reaffirmed this holding: "[A]n insured heir with a claim against an uninsured tortfeasor ... sufficiently states a claim recognized under Maine law." *Flaherty v. Allstate Ins. Co.,* 2003 ME 72, ¶ 22, 822 A.2d 1159, 1168 (citing *Jack,* 1999 ME 13, ¶¶ 9–12, 722 A.2d at 871–72).

[¶ 15] Possibly in response to this line of cases, insurers began adding limiting language in their insurance contracts. The policy language before us today states that Norfolk covers "damages ... an insured is legally entitled to recover ... because of bodily injury ... *sustained by an insured*" (emphasis added). The policy still attempts to comply with the requirements in our uninsured motorist statute while simultaneously avoiding the result reached in *Jack* and *Flaherty* by requiring that the injured person be an insured. The ques-

---

**9.** *Bartning,* 793 P.2d at 128–29; *Auto Club Ins. Ass'n v. DeLaGarza,* 433 Mich. 208, 444 N.W.2d 803, 805 (1989).

**10.** *Smith,* 186 Cal.App.3d at 242–43, 230 Cal. Rptr. 495 (holding that the objective of California's uninsured motorist laws is the protection for injuries *sustained by an insured*); *Livingston,* 927 S.W.2d at 446 (holding that the Legislature did not intend for survivors to pursue a wrongful death claim under their own uninsured motorist policy); *Delancey,* 918 F.2d at 495 (policyholders can *never* recover for injuries or death of a person not insured under the policy); *Gillespie,* 343 So.2d at 470 (the subject of an uninsured motorist claim *must* be an insured to recover under a uninsured motorist policy). Each of these decisions is based on a narrower interpretation of the respective uninsured motorist law than that adopted by us.

**11.** Our uninsured motorist statute requires that insurers provide coverage "for the protection of persons insured thereunder *who are legally entitled to recover* damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle." 24–A M.R.S.A. § 2902(1) (2000) (emphasis added).

tion before us today, therefore, is whether insurers can avoid the result reached in *Jack* and *Flaherty* by adding limiting language to their uninsured motorist policies. Put another way: does Maine's uninsured motorist statute, 24–A M.R.S.A. § 2902, require that insurers provide uninsured motorist coverage in situations like those found in *Jack*; *Flaherty*, and the present case?

[¶ 16] This is a question of statutory interpretation. It is clear that liability does not flow from Norfolk's policy, and we must now decide whether this is an impermissible limitation on uninsured motorist coverage pursuant to section 2902. We must pick up where we left off: in *Jack*, 1999 ME 13, ¶ 10, 722 A.2d at 871, we recognized that an insured heir with a claim against an uninsured tortfeasor sufficiently states a claim recognized under Maine law, and that the coverage sought is a consequence of the plain language of uninsured motorist policies that (unlike Norfolk's) track our uninsured motorist statute. Can we now hold that this coverage, though recognized, is not a requirement of our uninsured motorist statute? Applying the analysis of our previous cases, we must answer in the negative.

[¶ 17] We have said that the following "plain language" commands the type of coverage sought by the plaintiff:

> [Allstate] will pay damages for bodily injury, sickness, disease or death which an insured person is *legally entitled to recover* from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

(Emphasis added.) *Jack*, 1999 ME 13, ¶ 4, 722 A.2d at 870. Interpreting this policy, we concluded that its plain language required Allstate to provide precisely the type of coverage sought in the present

case. The present case turns not on the interpretation of a contract but on the meaning of the words in the statute. If section 2902 requires that insurers provide the type of coverage excised by Norfolk's contract then the limitation cannot stand.

[¶ 18] We must interpret the uninsured motorist statute to determine whether insurers are required to provide the type of coverage that we determined flowed from Allstate's language cited above. Section 2902(1) provides:

> No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State ... unless coverage is provided ... for the protection of persons insured thereunder *who are legally entitled to recover* damages from owners or operators of uninsured ... motor vehicles.

24–A M.R.S.A. § 2902(1) (emphasis added). The operative language in both the contract in *Jack* and the uninsured motorist statute are the same. The statute requires that insurers (at a minimum) provide coverage for persons insured who are "legally entitled" to recover from an uninsured motorist; the Allstate policy interpreted in *Jack* extended coverage when an insured is "legally entitled" to recover from an uninsured motorist. Interpreting this "plain language," we concluded that coverage extended to insured persons who were legally entitled to bring a wrongful death claim as a result of the death of a person killed by an uninsured motorist.

[¶ 19] An analysis of the same language must yield the same result. Norfolk suggests that the coverage is permissible under the statute, but not required. This makes little sense as Maine's uninsured motorist statute outlines the bare requirements that an insurer *must* satisfy prior to issuing a policy in Maine. If section 2902 speaks to wrongful death claims of the

type at issue here, then it does so in the context of requiring that insurers extend coverage to this situation.

[¶ 20] Uninsured motorist policies originally tracked the language in uninsured motorist statutes not because they wanted to adopt greater coverage than was required under the statute, but rather in an attempt to comply with the minimum requirements of the law. Unless we retreat from our interpretation of the policy language in *Jack*, we cannot now hold that the same words create a different result. The Legislature has set standards for minimal coverage. Insurers must meet that standard. Norfolk's policy does not meet the requirements of section 2902.

The entry is:

Judgment affirmed.

Dissenting: CLIFFORD and ALEXANDER, JJ.

CLIFFORD, J., with whom ALEXANDER, J., joins, dissenting.

[¶ 21] Without the policy provision at issue in this case, Norfolk & Dedham could not accurately address the risk to which it is exposed in the uninsured motorist part of its policy, and on which it could base a reasonable premium. That provision limits the risks arising from injuries to a determinable number of persons, i.e. the named insureds under the policy and resident family members of the named insureds, and protects the insurer from risks that are unascertainable. In my view, the provision is reasonable, comports with our uninsured motorist statute, and is not contrary to our case law precedent. Accordingly, I respectfully dissent.

[¶ 22] Butterfield's uninsured motorist coverage with Norfolk & Dedham is limited to damages from injuries sustained by an insured. Brandy was not a resident of Butterfield's household and was not an insured under his Norfolk & Dedham policy. Brandy was a named insured under her own automobile policy, and the $50,000 uninsured motorist limits of that policy have already been paid. Moreover, Brandy was living with her mother at the time of her death, and was an insured under her mother's automobile liability policy. The $50,000 of uninsured motorist coverage under that policy has already been paid as well.

[¶ 23] The purpose of uninsured motorist coverage is "to provide recovery for injuries that might not otherwise be compensable because of financially irresponsible drivers." *Brackett v. Middlesex Ins. Co.,* 486 A.2d 1188, 1190 (Me.1985). In *Wescott v. Allstate Ins.,* 397 A.2d 156 (Me.1979), we said that the legislative intent of the statute is "to benefit all insured motorists by throwing the burden of compensating for injuries which would otherwise go without redress from the individual victim to the insurance industry for a premium." *Wescott,* 397 A.2d at 166. The uninsured motorist statute "afford[s] to each owner of an automobile liability insurance policy a minimum standard of protection against the uninsured motorist." *Dufour v. Metro. Prop. & Liab. Ins. Co.,* 438 A.2d 1290, 1292 (Me.1982). Uninsured motorist coverage exists not to increase the exposure of insurers to indeterminable risks, but to allow policyholders a minimum of coverage against uninsured motorists.

[¶ 24] We have previously upheld exclusions or language limiting the scope of policy coverage with regard to uninsured motorists even in the absence of similar statutory exclusions or limitations. *See Bourque v. Dairyland Ins. Co.,* 1999 ME 178, ¶¶ 8–10, 741 A.2d 50, 52–53 (upholding exclusion for "owner of a private passenger vehicle from the policy's definition of relative," and thus precluding recovery by the stepson of an insured under uninsured

motorist coverage); *Brackett*, 486 A.2d at 1190–91 (upholding policy language excluding coverage for injuries sustained by an insured while on a motorcycle); *Lane v. Hartford Ins. Group*, 447 A.2d 818, 820 (Me.1982) (upholding policy exclusion for "a farm type tractor or equipment designed for use principally off public roads" as not in contravention of public policy); *Dufour*, 438 A.2d at 1292–93 (upholding policy language limiting the maximum recovery to $50,000 per person). We concluded that these restrictions were not repugnant to the public policy expressed by our uninsured motorist statute, 24–A M.R.S.A. § 2902(1) (2000).

[¶ 25] Moreover, we have avoided interpreting the uninsured motorist statute so broadly as to subject insurers to unforeseen risks and consumers to higher costs. In *Levine v. State Farm Mut. Auto. Ins. Co.*, 2004 ME 33, ¶ 14, 843 A.2d 24, 29, for example, we rejected the insured's argument and allowed an insurer providing uninsured motorist coverage to offset its responsibility against the tortfeasor's policy amount, thus avoiding increases in the risks sustained by the insurance carrier and the cost of insurance for the consumer.

[¶ 26] The common sense provision in the Norfolk & Dedham policy at issue permits recovery only to named insureds under the policy or resident family members of the named insureds. Brandy qualifies as neither. This limitation allows the insurer to assess and calculate the risk, and to charge a reasonable premium to cover that risk. Restrictions similar to the one in Norfolk & Dedham's policy have been upheld in most states in which they have been challenged. In *Valiant Ins. Co. v. Webster*, 567 So.2d 408 (Fla.1990), a passenger died as a result of the negligence of an uninsured driver. *Id.* at 409. The passenger's father, as a survivor of his son's estate, filed a claim for damages under his own uninsured motorist policy. *Id.* The Florida Supreme Court held that the uninsured motorist statute "does not require coverage for anyone who may be entitled to recover consequential damages as a survivor under the wrongful death statute when the decedent himself had neither liability nor uninsured motorist coverage under the policy." *Id.* at 411. Like the passenger in *Valiant Insurance*, the decedent in this case did not have coverage under Norfolk & Dedham's policy.

[¶ 27] In *Gaddis v. Safeco Ins. Co. of Am.*, 58 Wash.App. 537, 794 P.2d 533 (1990), the Washington Court of Appeals recognized that holding insurers liable for claims by insureds arising from the injuries or death of those not covered by the insurance policy exposed insurers to increased risks. *Id.* at 537. The court stated in denying the claims: "We do not perceive that such broad coverage of losses arising from death or injury to noninsured persons was expected or intended by the average reasonable purchaser of insurance." *Id.*

[¶ 28] Courts hold that provisions meant to shield insurers from unascertainable risks are reasonable and do not contravene public policy. For instance, the policy in *Allstate Ins. Co. v. Hammonds*, 72 Wash. App. 664, 865 P.2d 560 (1994), included a limitation identical to Norfolk & Dedham's restriction, which limited recovery to the named insured and the named insured's resident spouse and resident relatives. *Id.* at 560–61. The *Allstate Insurance* court noted that " 'exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason. . . . Where the insurer faces an increased risk . . . exclusions have been upheld.' " *Allstate Ins. Co.*, 865 P.2d at 563–64 (quoting *Eu-*

*rick v. Pemco Ins. Co.*, 108 Wash.2d 338, 738 P.2d 251, 253–54 (1987)). Like uninsured motorist coverage for motorcycles, uninsured motorist coverage for injuries to unknown third parties creates an increased risk to insurers. *Eurick*, 738 P.2d at 254; *see also Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97 Wash.2d 203, 643 P.2d 441, 444 (1982) (concluding that "[a]n insurer is free to limit its risks by excluding coverage when the nature of its risk is altered by factors not contemplated by it in computing premiums").

[¶ 29] Other states have upheld similar provisions. In *Auto Club Ins. Ass'n v. DeLaGarza*, 433 Mich. 208, 444 N.W.2d 803 (1989), the Supreme Court of Michigan held that "[i]nsurers may limit the risks they choose to assume and fix premiums accordingly," provided policy limitations are clearly expressed in the policy language. *Auto Club Ins. Ass'n*, 444 N.W.2d at 806. The limitation in this case is clearly set out in the language of Norfolk & Dedham's policy.

[¶ 30] In *Curtis v. Allstate Ins. Co.*, 473 F.Supp. 315 (E.D.La.1979), *aff'd*, 631 F.2d 79 (5th Cir.1980), the District Court for the Eastern District of Louisiana, in determining whether a territorial restriction found in a policy was contrary to public policy, observed that:

> Insurers providing [uninsured motorist] coverage must base their rates on the risk that the insured will be struck by an uninsured vehicle. It is certainly rational to exclude countries where the number of uninsured motorists is unknown or so high as to make coverage impractical. We do not find it was the legislature's intent to prohibit all general restrictions as applied to *uninsured* motorist coverage.

*Curtis*, 473 F.Supp. at 317. Without the provision limiting recovery to injuries sustained by an insured, the number of persons whose injuries are eligible for recovery under Norfolk & Dedham's policy is likewise unknown and makes the assessment of risk, and therefore the calculation of the cost of coverage, difficult to determine. *See id.*

[¶ 31] Contrary to the Court's conclusion, we have not decided that our uninsured motorist statute prohibits the provision at issue here. Such a policy limitation has never been before us, and was not before us in *Jack v. Tracy*, 1999 ME 13, 722 A.2d 869. In *Jack*, Jessica Jack was killed in an auto accident in which she was a passenger in an automobile operated by Scott Tracy. *Jack*, 1999 ME 13, ¶ 2, 722 A.2d at 870. Jessica was fifteen years old and living with her mother. *Id.* Her father's wife, Rita Rogers, was the owner of an automobile policy issued by Allstate with broadly worded uninsured motorist language that provided:

> [Allstate] will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

*Id.* ¶¶ 3–4, 722 A.2d at 870.

[¶ 32] Jessica's father, as the spouse of Rogers, was an insured person under the Allstate policy, and, as an heir of Jessica, he was legally entitled to recover from Tracy, the operator of the uninsured vehicle, for the wrongful death of his daughter. *Id.* ¶¶ 9–10, 722 A.2d at 871; 18–A M.R.S.A. § 2–804 (1998 & Supp.2003). The Allstate policy did not limit coverage to claims brought by named insureds for injuries sustained by named insureds, as does the policy in the present case. In *Jack*, we did not hold that recovery by the girl's father was *mandatory* under the uninsured motorist statute. Rather, the

holding was that the statute did not *preclude* such recovery. Nor does our decision in *Flaherty v. Allstate Ins. Co.,* 2003 ME 72, 822 A.2d 1159, which involved a policy with the same uninsured motorist language as in *Jack,* prohibit the provision in Norfolk & Dedham's policy.

[¶ 33] Indeed, in support of our decision in *Jack,* we cited *Auto Club Ins. Ass'n. Jack,* 1999 ME 13, ¶ 12, 722 A.2d at 871–72. In *Auto Club Ins. Ass'n,* the Michigan Supreme Court stated that "[i]f [the insurer] intended to except wrongful death damages or *to limit coverage to bodily injury sustained only by an insured person,* it could have included limiting language in its policy of insurance." *Auto Club Ins. Ass'n,* 444 N.W.2d at 806 (emphasis added).

[¶ 34] The named insured limitation in its policy allows Norfolk & Dedham, as an insurer, to better ascertain its risk in calculating premiums to be paid for the coverage offered. The decision by the Court, when taken to its logical conclusion, means that an insurer offering uninsured motorist protection is prevented from restricting in *any* way the scope of coverage. In my view, the Legislature did not intend our uninsured motorist statute to prevent insurers from assessing risks and limiting uninsured motorist coverage to damages arising from injury to insureds. *See State v. Hart,* 640 A.2d 740, 741 (Me.1994) (citation omitted) ("The Legislature is presumed not to intend an absurd result ...."). Such a provision does not contravene the public policy behind uninsured motorist coverage in this State, and is reasonable. I would vacate the judgment.