704 P.2d 1092

**Marilyn K. SCHMICK,**
Plaintiff-Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendant-Appellee.

**No. 15459.**

Supreme Court of New Mexico.

Aug. 14, 1985.

James T. Roach, Albuquerque, for plaintiff-appellant.

Montgomery & Andrews, John E. Conway, Phyllis A. Dow, Albuquerque, for defendant-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiff Marilyn Schmick (Schmick) brought a declaratory judgment action in district court alleging that defendant State Farm Insurance Company (State Farm) had failed to pay the underinsured benefits to which she was entitled. Plaintiff moved for summary judgment asking that the court declare her right to stack the proceeds of two underinsured motorist policies. Defendant made a cross-motion for summary judgment requesting that Schmick not be permitted to stack the two policies. The district court permitted Schmick to stack the policies but offset that amount by the underinsured motorist's liability coverage. Plaintiff appeals. We affirm.

The undisputed facts relevant to this case are that Schmick purchased two uninsured motorist policies, one to insure her Toyota and one to cover the Ford she and her husband owned. Marilyn Schmick was the named insured on the policy for the Toyota and Pete Schmick, her husband, was the named insured on the policy covering the Ford. Each policy provided underinsured motorist benefits in the amount of

$15,000, and Schmick paid a separate premium for each.

While driving her Toyota, Schmick was injured in a collision with Luciano Saiz (Saiz), who was also insured by State Farm Insurance Company. Saiz had liability coverage in the amount of $25,000. Accordingly, Schmick received $25,000 in liability insurance proceeds from Saiz. Defendant State Farm paid to Schmick $5,000 in underinsured motorist benefits.

At the hearing on the motions for summary judgment the district court found that plaintiff could stack benefits under the two policies in question. The court then applied New Mexico's uninsured/underinsured motorist statute, NMSA 1978, Section 66–5–301 B (Repl.Pamp.1984), to make the following findings. Plaintiff's aggregate of uninsured motorist coverage, which was found by stacking the two $15,000 policies equalled $30,000. Plaintiff had received $25,000 from Saiz. Thus, pursuant to section 66–5–301(B), Saiz was underinsured by $5,000. Since State Farm had already paid plaintiff $5,000, it owed her nothing more under the two policies.

The district court stated that the statute provided minimum protection up to the amount purchased by the insured. Therefore, plaintiff was entitled to a total of $30,000, to be paid in part by the uninsured motorist carrier. In the district court's view, the underinsurance coverage provided by State Farm was not in addition to that provided by the other vehicle but was intended to supplement the amount paid by the underinsured motorist so that the insured recovered an amount equal to the uninsured motorist protection purchased.

On appeal we address two issues. The first is whether New Mexico's underinsured motorist provision allows an insured to stack two underinsured motorist policies for purposes of determining the tortfeasor's underinsured status. The second issue is whether underinsured motorist benefits are calculated by subtracting the

amount of the tortfeasor's liability coverage from the amount of the insured's uninsured motorist coverage or whether the underinsurance benefits due equal the amount of uninsured motorist coverage purchased for the insured's benefit in addition to the amount of liability insurance proceeds available from the tortfeasor.[1]

In resolving the case before us, we must examine the underinsured motorist provisions of New Mexico's uninsured motorist statute. § 66–5–301(B). The policies in question do not address underinsured motorist coverage. Thus, the statute will be read into the policies and, to the extent that the policy provisions conflict with the statute, the statute prevails. *Howard v. Farmers Insurance Co.*, 5 Kan.App.2d, 499, 619 P.2d 160, (1980). *See also, Bauer v. Bates Lumber Co.*, 84 N.M. 391, 503 P.2d 1169 (Ct.App.), *cert. denied*, 84 N.M. 390, 503 P.2d 1168 (1972).

Subsection 66–5–301(B) states that "uninsured motorist coverage ... shall include underinsured motorist coverage." The statute further provides that an underinsured motorist is:

an operator of a motor vehicle with respect to the ownership, maintenance or use of which *the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.* (emphasis added).

Thus, in applying New Mexico's underinsured motorist provision, the first step is to determine the limits of liability under Schmick's uninsured motorist coverage. This presents the issue of whether Schmick may stack the two $15,000 policies to determine Saiz' underinsured status. Resolution of this issue requires disposing of three points raised by State Farm. We first address defendant's argument concerning the correct interpretation of the word "coverage" as used in our underin-

1. We note that under either formulation, the combined amounts the insured recovers from his underinsured motorist insurance carrier and the tortfeasor's liability insurer can never exceed the insured's total damages.

sured motorist statute. State Farm contends that Schmick's uninsured motorist coverage is limited to one policy because the statute says "the limits of liability under the insured's uninsured motorist '*coverage*'" and not *coverages*. Furthermore, defendant asserts that since the Legislature used the word "sum" in referring to the tortfeasor's liability coverage it could have also used "sum" when referring to the limits of the insured's uninsured motorist coverage had it intended "coverage" to be plural.

There are no prior cases which construe "coverage" as used in New Mexico's underinsured motorist provision. In interpreting this statute, we ascertain the legislative intent from the language used and words will be given their ordinary meaning unless a different intent is clearly indicated. *Davis v. Commissioner of Revenue,* 83 N.M. 152, 489 P.2d 660, (Ct.App.), *cert. denied,* 83 N.M. 151, 489 P.2d 659 (1971). Furthermore, in determining the legislative intent, we look "not only to language used in the statute, but also to the object sought to be accomplished and the wrong to be remedied". *Chavez v. State Farm Mutual Automobile Insurance Co.,* 87 N.M. 327, 328, 533 P.2d 100, 101 (1975) (citing *Rodman v. State Farm Mutual Automobile Insurance Co.,* 208 N.W.2d 903 (Iowa 1973).

The statutory definition of underinsured motorist indicates that an insured is entitled to underinsurance benefits to the extent that his uninsured/underinsured coverage exceeds the tortfeasor's liability insurance. In other words, the intent of the Legislature was to put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured/underinsured motorist protection purchased for the insured's benefit. In this case, two uninsured/underinsured policies were purchased for Schmick's benefit. Therefore, in order to effectuate the Legislature's intent, the two underinsured motorist policies must be stacked for an aggregate of $30,000. "Coverage", then, includes one or more policies depending on the number purchased for the insured's benefit. *See Connolly v. Royal Globe Insurance Co.,* 455 A.2d 932 (Me.1983).

This interpretation of the statutory language is in accord with the broad objective of the uninsured/underinsured motorist statute. We have stated that the uninsured motorist statute must be liberally construed to implement the purpose of compensating those injured through no fault of their own. *Chavez v. State Farm Mutual Automobile Insurance Co.,* 87 N.M. at 329, 533 P.2d at 102. To that end, the only limitations on protection are those specifically set out in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured. *Id.* In the context of underinsured motorist protection, a subcategory of uninsured motorist coverage, the requirements are that the insured be legally entitled to recover damages and that the negligent driver be inadequately insured. Therefore, in the case before us we liberally construe "coverage" to include both policies so that Schmick be compensated as fully as possible for the injuries she suffered. *See Konnick v. Farmers Insurance Co.,* 103 N.M. 112, 703 P.2d 889 (1985).

Further support for this result is found in the rules governing statutory construction. The Legislature has mandated that in interpreting statutes, "words importing the singular number may be extended to several persons or things" unless such a construction would be "inconsistent with the manifest intent of the Legislature or repugnant to the context of the statute". NMSA 1978, § 12–2–2. Thus, although "coverage" might be either a singular or plural noun, it may be read as plural where to do so would neither contravene the intent of the Legislature nor interfere with the internal consistency of the statute. We hold that "coverage" must, in fact, be read in the plural in order to further the legislative goal of compensating innocent victims of underinsured motorists. Furthermore,

to do so would not render the statute internally inconsistent.

■ The second point State Farm raises in determining the limits of Mrs. Schmick's uninsured/underinsured motorist coverage is whether plaintiff has available to her proceeds from both policies given that she is the "named insured" on only one. Defendant argues that only "named insureds" may stack policy proceeds. Mere "insureds", according to State Farm, are limited to recovering under the policy on the vehicle in which they were riding at the time of the accident. Thus, Schmick has only $15,000 in underinsurance coverage available to her; since the tortfeasor had $15,000 in liability coverage, the tortfeasor was not underinsured and State Farm owes no underinsured motorist benefits.

In *Konnick v. Farmers Insurance Co.*, 103 N.M. 112, 703 P.2d 889, cited previously, we stated that named insureds, their spouses, and relatives who live in the same household are "class one" insureds. Persons who have no familial relationship to the named insured and are mere occupants of a vehicle covered by an uninsured/underinsured policy are "class two" insureds. State Farm, in fact, has defined these two classes of claimants in its uninsured motorist policies. Under *Konnick*, members of "class one" may stack all uninsured/underinsured motorist policies purchased by the named insured since the policies were obtained specifically to benefit the named insured and members of his family. "Class two" members, on the other hand, are restricted to recovering under the policy on the car in which they rode because the purchaser of the policy only intended occupants to benefit from that particular policy. Schmick, as a "class one" insured is entitled, therefore, to stack the proceeds of both underinsured motorist policies for purposes of determining Saiz' underinsured status.

■ The third point State Farm raises in opposition to Schmick stacking both underinsured motorist policies is that an exclusion contained in the company's uninsured motorist policies forbids plaintiff from do-

ing so. Defendant refers to the following language:

EXCLUSIONS—SECTION III [UNINSURED MOTORIST COVERAGE] DOES NOT APPLY:

\*　　\*　　\*　　\*　　\*　　\*

(b) TO BODILY INJURY TO AN *INSURED* WHILE *OCCUPYING* A MOTOR VEHICLE (OTHER THAN AN *INSURED MOTOR VEHICLE*) OWNED BY THE NAMED INSURED OR ANY RELATIVE RESIDENT IN THE SAME HOUSEHOLD \* \* \*.

The policies further provide that an insured motor vehicle means a motor vehicle:

(1) described in the schedule as an insured motor vehicle to which the bodily injury and property damage liability coverages of the policy apply;

(2) while temporarily used as a substitute for an insured motor vehicle as described in subparagraph (1) above \* \* \*

(3) while being operated by the first named insured or by his spouse if a resident of the same household; but the term 'insured motor vehicle' shall not include:

\*　　\*　　\*　　\*　　\*　　\*

(iii) under subparagraphs 2 and 3 above, a motor vehicle owned by the named insured or by any resident of the same household as such insured \* \* \*.

These policy provisions when read together are not easily interpreted. State Farm, apparently, extends coverage to a vehicle described in the liability section of the policy, to a substitute for a vehicle so described in the policy and to a vehicle which is being operated by the named insured or a resident of the named insured's household. But where the substitute vehicle or the vehicle being operated by the named insured or his spouse is owned by the named insured or a resident of his household and is not described in the policy, it is not an insured vehicle within the meaning of the policy and its occupant is excluded from coverage.

Defendant argues, therefore, that Schmick is entitled to recover under the policy on the Toyota, the car she was driving at the time of the accident, because it is described in that policy. Schmick cannot recover, however, under the Ford policy. This is because the Toyota is not an insured vehicle under that policy. The Toyota is not described in the policy on the Ford nor was it being used as a substitute for the Ford. Further, though it would appear to be an insured vehicle under subparagraph 3, as a vehicle being operated by the spouse of the named insured, it does not qualify as such because under the exception set out in subpart iii, the Toyota is owned by Schmick.

As we stated previously the only limitations to be placed on uninsured/underinsured motorist coverage are that the insured legally be entitled to recover damages and that the negligent driver be either uninsured or underinsured. Therefore, we hold that State Farm's exclusionary clause which purports to limit Schmick to recovery under the Toyota policy is void as against New Mexico's policy of compensating persons injured through no fault of their own. *See Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. at 329, 533 P.2d at 102 (1975). We note, also, the logical inconsistency of finding such a clause valid. Were Schmick injured by an underinsured motorist while she was a pedestrian, she would have both policies available to her. Hence, it makes no sense to penalize plaintiff because she was driving a vehicle specifically designated as insured under one State Farm policy but not mentioned in another one of the company's own policies. *See Harhen v. State Farm Mutual Automobile Insurance Co.*, 61 Ill. App.3d 388, 18 Ill.Dec. 542, 377 N.E.2d 1178 (1978); *Eich v. State Farm Mutual Automobile Insurance Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981).

Further, in striking down an exclusionary clause similar to the one before us, the Illinois Court of Appeals stated that "the wording of the exclusionary provision and the necessity of cross-checking to the policy definitions for an explanation of the terms might prove difficult to a person unskilled in these matters". *Harhen v. State Farm Mutual Automobile Insurance Co.*, 61 Ill.App.3d at 393, 18 Ill.Dec. at 546, 377 N.E.2d at 1182. We find that State Farm's exclusionary clause is difficult to construe because of the wording of the clause itself and the necessity of incorporating into the exclusion a complex definition of insured motor vehicle. Consequently, given that Schmick reasonably expected to be covered by both policies in the event she was injured by an underinsured motorist, we will not allow an abstruse policy provision to exclude her from coverage under the policy on the Ford.

Having now determined that the limits of liability under Schmick's uninsured motorist coverage are $30,000, the second step is to calculate the amount of underinsurance benefits owing to plaintiff. Schmick argues that she is entitled to collect the full $30,000 from State Farm. First, plaintiff notes that if the $30,000 is reduced by the $25,000 available from the tortfeasor, State Farm would owe her only $5,000. Since all motorists were required to carry a minimum of $15,000[2] in uninsured motorist coverage in New Mexico at the time suit was filed, and underinsurance is a subcategory of uninsured motorist coverage, plaintiff argues that State Farm would be permitted to pay insurance proceeds in an amount less than the statutory minimum. Schmick contends that such a result would be contrary to public policy, since State Farm would be disbursing policy proceeds in an amount less than that contemplated by the Legislature. Further it allows State Farm to pay benefits in an amount less than that for which it received premiums.

In addressing plaintiff's first contention we again examine the underinsured motorist provision of our uninsured motorist statute since the policies do not directly address this issue. The statute defines one as being underinsured to the extent that

2. NMSA 1978, §§ 66–5–301, 66–5–222.

the insured's uninsured motorist coverage exceeds the underinsured's liability coverage. § 66–5–301(B). It is apparent from the statutory definition that the Legislature intended that the amount of underinsurance benefits due would differ depending on the relative amounts of coverage purchased by the tortfeasor and the insured. Thus, while an insured is required to purchase $15,000 in uninsured motorist coverage, at a minimum, that is not necessarily the minimum requirement for underinsured motorist coverage.

■ We agree with defendant that the statutory minimum of underinsurance motorist coverage an insurance company is to provide is that amount by which the insured's uninsured motorist coverage exceeds the tortfeasor's liability insurance. While it is true that underinsured motorist coverage is a subdivision of uninsured motorist coverage and similar policy considerations underlie each, the Legislature did not intend that underinsurance benefits would be calculated in the same way as are uninsured motorist proceeds. This is evident in the statutory scheme. § 66–5–301. Therefore, in paying $5,000, State Farm would not be violating the mandate of the statute nor would it be paying less than it contracted with Schmick to pay.

Plaintiff also intimates that the underinsured motorist provision sets no maximum on the amount an insured can recover except for the total amount of the insured's damages. Schmick quotes language from *Sloan v. Dairyland Insurance Co.,* 86 N.M. 65, 519 P.2d 301 (1974) in which we allowed the decedent's executor to recover the proceeds of two $10,000 uninsured motorist policies, even though the statutory minimum of uninsured motorist coverage required at the time was $10,000. In dismissing the insurance company's contention that recovery be limited to the minimum required by statute we said that "[w]e find in our statutory scheme a minimum uninsured motorist coverage without difficulty, but are unable to perceive a maximum. Had the Legislature intended the $10,000 to be both a minimum and a

maximum it could easily have said so, but it did not." *Id.* at 68, 519 P.2d at 304. Accordingly, the plaintiff was permitted to collect $20,000, given that damages to decedent's estate exceeded the recovery available under one policy.

■ We observe that the Legislature, in defining an underinsured motorist, set the minimum and maximum on the amount an insured can collect from his underinsured motorist insurance carrier. *See* § 66–5–301(B). Our statute provides a specific formula by which to compute whether one was underinsured and by what amount. *Id.* The formula is the criterion to be used in determining underinsurance benefits due and it defines the parameters within which recoveries must stay. Therefore, an insured collects from his underinsured motorist carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less.

Plaintiff also argues that language contained in State Farm's uninsured/underinsured motorist policies prevents it from offsetting the amount available under both policies by the sum paid by Saiz' liability insurance. The policies provide that an uninsured motorist carrier must pay "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." The policies also state that:

> (c) Any amount payable under this coverage because of bodily injury * * * sustained in an accident by a person who is an *insured* * * * shall be reduced by:
>> (1) all sums paid on account of such bodily injury or property damage by or on behalf of
>>> (i) the owner or operator of the uninsured motor vehicle * * *.

Plaintiff calls to the court's attention *McKoy v. Aetna Casualty and Surety Co. Inc.,* 281 Md. 26, 374 A.2d 1170 (1977) in which the Maryland Court of Appeals construed nearly identical policy provisions as requiring that any amounts paid by the

tortfeasor be set off against the *total damages* the injured insured was entitled to recover; the set off was not to be against the face value of the underinsured motorist coverage.

■ We note that since this case was handed down, the Maryland Legislature amended its uninsured/underinsured motorist statute to provide, in pertinent part, that "the limit of liability for an insurer providing uninsured motorist coverage ... is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds and securities applicable to the bodily injury or death of the insured." Md.Ann.Code art. 48A, § 541c(3) (Cum.Supp.1984). We question, therefore, whether the *McKoy* holding has continued vitality. In any case, we have noted previously that where insurance policy provisions conflict with applicable statutes, the latter prevail. Hence, to the extent that State Farm's policy provisions, quoted above, require the uninsured/underinsured motorist carrier to pay underinsurance benefits by reference to the insured's total damages rather than the aggregate of uninsured motorist coverage purchased for the insured's benefit, the provisions are void.

■ Schmick also contends that New Mexico's underinsured motorist statute neither requires nor authorizes policy proceeds to be offset by the amount of the tortfeasor's liability coverage. While our statute does not specifically provide that the insured's underinsured motorist liability insurance is to be offset by the tortfeasor's liability coverage as do the statutes of other states, *see e.g.,* Fla.Stat. § 627.727(1) (1983); Tex.Ins.Code Ann. § 5.06–1 (Vernon 1981), such an offset is inherent in our statutory definition of underinsured motorist. The state of being

underinsured exists when the aggregate of the insured's uninsured motorist coverage reduced by the tortfeasor's liability coverage is greater than zero. Hence, offset is required. Our statute limits the insured's recovery to the amount of uninsured motorist coverage purchased for the insured's benefit; that amount will be paid in part by the tortfeasor's liability carrier and the remainder by the insured's uninsured motorist insurance carrier.

Schmick cites cases which allow the insured to recover the aggregate of uninsured motorist coverage purchased for the insured's benefit in addition to liability payments from the tortfeasor where the insured's damages equal or exceed the sum of these two amounts. *Whitten v. Empire Fire and Marine Insurance Co.,* 353 So.2d 1071 (La.App.1977); *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn. 1980). Plaintiff asserts that our statute compels the same result. These cases, however, are in jurisdictions which have enacted statutes significantly different from ours. Under such statutes, the insured's total damages, and not the amount of uninsured motorist coverage purchased for his benefit, provide the ceiling on recovery. *See* La.Rev.Stat.Ann. § 22:1406(D)(2)(b) (West 1978); Minn.Stat. § 65B–49, (Supp.1977)[3]; *see also* Wash. Rev.Code Ann. § 48.22.030 (1984) and *United Services Automobile Association v. Winbeck,* 30 Wash.App. 769, 637 P.2d 996 (1981).

Thus, where the most an insured can recover is his total damages, and the aggregate of underinsured motorist benefits plus the tortfeasor liability proceeds are less than those damages, there is no justification for offsetting the available underinsurance benefits by the liability cover-

---

**3.** The underinsured motorist provision on which the *Holman* court relied was repealed in 1980. 1980 Minn.Laws, ch. 539, § 7. The *Holman* rule, which allows the injured insured to collect the aggregate of underinsured motorist benefits purchased for his benefit in addition to liability insurance payments from the tortfeasor

has been upheld, however, as a means of effectuating the legislative goal of compensating victims of inadequately insured motorists. *Meyer v. Illinois Farmers Insurance Group,* 353 N.W.2d 141 (Minn.App.1984), *cert. granted,* 360 N.W.2d 632 (Minn.1985); *Hoeschen v. South Carolina Insurance Co.,* 349 N.W.2d 833 (Minn.App.1984).

age. We note that even under these statutory schemes, however, the insured's total damages are offset by the amount of liability coverage available from the tortfeasor.[4] In contrast, under a statute like ours, where the most an insured can receive is the amount of underinsurance purchased for his benefit, that amount must be offset by available liability proceeds. Hence, under either type of statute, the maximum recovery is always offset by the tortfeasor's liability insurance coverage.

While we observe that the result reached by the Louisiana, Minnesota and Washington courts is more equitable in that the injured insured collects all proceeds for which, ostensibly, a premium has been paid and has his or her damages compensated more fully, New Mexico's uninsured/underinsured motorist statute, as presently enacted by our Legislature does not allow for such recovery.

In view of all the foregoing we hold that the trial court did not err in finding that plaintiff is not entitled to further recovery. Plaintiff's motion for summary judgment was properly denied and defendant's was appropriately granted.

IT IS SO ORDERED.

RIORDAN and WALTERS, JJ., concur.

---

**4.** Furthermore, in jurisdictions which allow the insured to recover the amount of his damages, it is possible to have offset of underinsurance benefits by liability coverage when the aggregate of underinsured motorist coverage and the tortfeasor's liability coverage added together are greater than the insured's damages. Thus, if the insured's total damages were $50,000 and she had uninsured motorist coverage in the amount of $30,000, the uninsured motorist carrier would pay only $25,000 where the tortfeasor's liability coverage paid the insured $25,000.